Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff, a captain in the Navy, sues to recover $572.50 under the following facts:
On January 28, 1927, plaintiff was properly ordered to make a permanent change of station from the U.S.S. Argonne, home yard Vallejo, California, to sixteenth naval *512 district, Cavite, P.I. Before sailing for the Philippines plaintiff on March 1, 1927, and twice afterwards during the same month applied to the Chief of the Bureau of Navigation for an authorization for the transportation of his wife and infant child from Vallejo, Calif., to Manila, P.I. This he did under the following acts of Congress and Executive order:
Section 12, act of May 18, 1920, 41 Stat. 604, which provides:
“ That hereafter when any commissioned officer, noncom-missioned officer of the grade of color sergeant and above, including any noncommissioned officer of the Marine Corps of corresponding grade, warrant officer, chief petty officer, or petty officer (first class), having a wife or dependent child or children, is ordered to make a permanent change of station, the United States shall furnish transportation in kind from funds appropriated for the transportation of the Army, the Navy, the Marine Corps, the Coast Guard, the Coast and Geodetic Survey, and the Public Health Service to his new station for the wife and dependent child or children: Provided, That for persons in the naval service the-term ‘permanent station,’ as used in this section, shall be interpreted to mean a shore station or the home yard of the vessel to which the person concerned may be ordered; and a duly authorized change in home yard or home port of such vessel shall be deemed a change of station: Provided further, That if the cost of such transportation exceeds that for transportation from the old to the new station the excess cost shall be paid to the United States by the officer concerned : Provided further, That transportation supplied the wife or dependent child or children of such officer, to or from stations beyond the continental limits of the United States, shall not be other than by Government transport, if such transportation is available.”
Section 12, act of June 10, 1922, 42 Stat. 631, which provides, inter alia:
_ “ In lieu of the transportation in kind authorized by section 12 of an act entitled ‘An act to increase the efficiency of the commissioned and enlisted personnel of the Army, Navy, Marine Corps, Coast Guard, Coast and Geodetic Survey, and Public Health Service ’, approved May 18, 1920, to be furnished by the United States for dependents, the President may authorize the payment in money of amounts equal *513 to such commercial transportation costs when such travel shall have been completed. Dependent children shall be such as are defined in section 4 of this act.”
Executive Order 3726, dated August 25, 1922, reads as follows:
“ For the purpose of carrying into effect the provisions of the second paragraph of section 12 of an act * * * approved June 10,1922, the Secretary of War, the Secretary of the Navy, * * * are hereby authorized to make payments in money for the cost of travel of dependents of officer's and enlisted men by commercial carrier in lieu of transportation in kind authorized by section 12 of an act * * * approved May 18, 1920, when such travel shall have been completed under such regulations as they may severally prescribe for the services under their charge.”
The Chief of the Bureau of Navigation, acting under express orders issued January 29, 1927, by the Secretary of the Navy, replied to plaintiff’s application to the effect that the Secretary, owing to unsettled conditions in the Asiatic stations, had suspended authorizations for the transportation of officers’ dependents until existing conditions changed for the better to such an extent as would render it advisable to authorize transportation for an officer’s dependents to such stations, and plaintiff’s application was not approved. The plaintiff, notwithstanding the information furnished him by the Bureau, made a second application, which was refused for the same reason as the first. Thereafter the plaintiff sailed alone to the Philippines in May 1927. One month later, in June 1927, plaintiff purchased tickets at a cost of $572.50 for his wife and child, both of whom sailed on the commercial liner President Grant June 11, 1927, arriving in Manila a month later, where they joined the plaintiff. This suit is to recover a judgment for the above amount under the acts quoted.
The plaintiff asserts that the legal right to have the cost of transporting his dependents from one permanent station to another borne by the Government is unmistakably clear and free from doubt because the acts which grant the right are free from ambiguity, exact no interpretation, and are mandatory in their nature, excluding the exercise of discre *514 tion by the Department. It is not our opinion that the case demands a discussion of the points raised; reduced to its final analysis, it is a contention that when a naval officer is detached from one permanent station and detailed to another the order embodying the transfer operates to eo in-stanti entitle the officer to the cost of transporting his dependents, irrespective of first procuring an authorization from the Department, or whether in the judgment of the Department it is advisable or inadvisable to issue the same at the time. In other words, the act divests the Department of the right to administer the law in keeping with its regulations, or an existing military necessity. The act says, “the President may authorize the payment in money of amounts equal to such commei’cial transportation costs.” [Italics inserted.] The President by Executive order delegated his authority to the Secretary of the Navj^ to be administered under regulations, and we are'unable to believe, that'.Congress intended to divest the Secretary of the Navy of authority to authorize the transportation of an officer’s dependents, or administer the law in view of local or foreign conditions which inevitably enter into naval activities. At any rate, plaintiff was obligated to procure an authorization and this he did not do. The Secretary of the Navy by his order did not refuse the plaintiff the benefits of the law. The order merely suspended the same temporarily, in view of conditions which were said to be sufficient to warrant the action. The plaintiff was advised that later on his dependents might join him. Instead, however, of acting in accord with proper orders, departmental regulations, and military discipline, he proceeded voluntarily to incur the expense involved in the transportation of his dependents at a time and under circumstances when he must have known that an authorization for the travel was imperative if the expense of the same was to be borne by the Government.
Congress did- not, we think, intend by the laws to grant a right in derogation of the administrative authority conferred upon the department and thereby permit an officer to acquire that right without first complying with the regulations and orders of his superiors properly issued in the *515 course of performance of a military duty. If the contrary is true, an officer may with impunity ignore the administrative regulations of the department and transport his dependents, irrespective of whether the department regards their presence favorably or unfavorably from a military standpoint. The laws are manifestly favorable to the officer, and Congress in their enactment was doubtless granting the right without an intention to subvert or interfere with proper military orders issued by authorized officials of the department. Congress knew the course of procedure in the department and the necessity for administrative action. The case of Bullard v. United States, 66 C.Cls. 264, is not this case. Admiral Bullard received the approval of the Navy Department for the expense incurred in the transportation of his wife from China to his home and it was paid to him. Subsequently the amount was checked against his pay, and this court awarded him judgment for the same under the laws involved in this case. The Secretary of the Navy authorized the payments made in the Bullard ease before they were made.
In the case of Henry v. United States, 74 C.Cls. 527, the plaintiff’s application was absolutely refused and he was compelled to purchase transportation for his dependents. The present record discloses no absolute refusal to grant plaintiff’s application. What was done was a temporary suspension and no more. The plaintiff would have received the benefits of the statute if he had delayed a short time. No action of the department denied him the right. What he did, in effect, was to waive his rights and without protest or objection, in defiance of an order to the contrary, and for reasons of his own, incur the expense of transportation now claimed. The plaintiff’s actions indicate clearly that he preferred, independently of any statute, to personally pay for the transportation of his family to his permanent station rather than delay the same until it would have been paid by the Government. This, we think, is an entirely different situation from one where an officer under orders to permanently change his station is denied the right of the expense of transporting his dependents without qualification *516 and in the face of regulations entitling him thereto. The plaintiff has not sought nor obtained an authorization from the department since the payment of the sum sued for. The petition will be dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; and GkeeN, Judge, concur.
Littleton, Judge, dissents.